IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MICHELLE S., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25-cv-01045-TMP |
| | ) | |
| FRANK BISIGNANO,[1] | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
|     Defendant. | ) | |

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**

On February 14, 2025, Michelle S. ("Plaintiff") filed a Complaint seeking judicial review of a Social Security decision.[2] (ECF No. 1.) Plaintiff seeks to appeal the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II disability insurance benefits. (ECF No. 15 at PageID 1.) For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1]Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano will be substituted for Michelle King as the defendant in this suit.

[2]After the parties consented to the jurisdiction of a United States magistrate judge on September 30, 2024, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 13.)

## I. BACKGROUND

On March 22, 2022, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 404-434, and a proactive Title XVI application for supplemental security income (ECF No. 10 at PageID 18.) Both applications, which alleged an onset date of January 1, 2022, were denied initially and upon reconsideration. (Id.) Plaintiff then requested a hearing, which was held before an Administrative Law Judge ("ALJ"), ALJ Shimer, via telephone on October 12, 2023. (Id.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Plaintiff was not disabled. (Id. at PageID 33.) At the first step, ALJ Shimer found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date January 1, 2022. (Id. at PageID 21.) At the second step, ALJ Shimer concluded that Plaintiff had the following severe impairments: obesity, diabetes, neuropathy, chronic heart failure, and carpal tunnel syndrome. (Id.)

At the third step, the ALJ concluded that Plaintiff's impairments did not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at PageID 22.) Accordingly, ALJ Shimer then had to determine whether Plaintiff

retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. ALJ Shimer found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, [Plaintiff] can only stand and walk for four hours total in an eight-hour workday. [Plaintiff] can occasionally operate foot controls with the bilateral lower extremities. [Plaintiff] can also only occasionally climb, balance, stoop, kneel, crouch, or crawl but can never climb ladders, ropes, and scaffolds. [Plaintiff] can frequently handle with the bilateral upper extremities. [Plaintiff] can tolerate no concentrated exposure to temperature extremes and can perform no work at unprotected heights or around unguarded moving machinery.

(Id. at PageID 23.) Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Additionally, light work includes jobs "requir[ing] a good deal of walking or standing, or [that] involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

In reaching the RFC determination, ALJ Shimer discussed Plaintiff's testimony and the medical evidence in the record. He summarized Plaintiff's testimony as follows:

> [Plaintiff's] testimony at the hearing was not entirely consistent with her prior reports or her allegation of disability . . . . She testified that she worked for a company and they paid her in 2022 and that she got about 60 hours every two weeks. She testified to stopping because her hands and feet could not take cleaning houses, though records indicate that she reported that

>    she quit due to swelling, which has not been observed in
>    the record since February of 2022. [Plaintiff] testified
>    that her feet and hands were the biggest issue preventing
>    work, with the pain in her feet, the pressure against
>    her ankles, and swelling to the extent she had to prop
>    her feet. However, again, there is no record of such
>    swelling after February of 2022. She testified to being
>    fatigue[d] due to diabetes, even though she has reported
>    being able to care for her grandchildren. She testified
>    to numbness and tingling in her feet, though records
>    indicate that this occurred at night, with gabapentin
>    prescribed to be taken at bedtime. She testified to
>    elevating her feet almost every night, but there is no
>    evidence she has reported this to any treating or
>    examining provider. She testified to chest pain and
>    discomfort, though cardiology records show no such
>    complaints.

(ECF No. 10 at PageID 29 (internal citations omitted).)

On January 24, 2024, ALJ Shimer issued a decision detailing the findings summarized above. The Appeals Council denied Plaintiff's request for review. (Id. at PageID 1.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, Plaintiff argues that ALJ Shimer incorrectly evaluated her RFC and did not sufficiently account for the effect of obesity on Plaintiff's ability to perform routine movements and necessary work activities.

## II.   ANALYSIS

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which they were a party. "The court shall have power to

enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rollins v. Comm'r of Soc. Sec., No. 24-1180, 2025 WL 2710577, at *3 (W.D. Tenn. Sept. 23, 2025). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)); Moats v. Comm'r of Soc. Sec., 42 F.4th 558, 561 (6th Cir. 2022).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)); Foltz obo R.B.K.F. v. Comm'r of Soc. Sec., No. 23-3362, 2023 WL 7391701, at *3 (6th Cir. Nov. 8, 2023). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire

whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Hum. Servs., 893 F.2d 106, 108 (6th Cir. 1989)); Marquitta B. v. Comm'r of Soc. Sec. Admin., No. 23-cv-1276, 2025 WL 959946, at *8 (W.D. Tenn. Mar. 31, 2025). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)); Floyd v. Comm'r of Soc. Sec., No. 23-2036, 2024 WL 3103757, at *1 (6th Cir. June 24, 2024). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Robbins v. Comm'r of Soc. Sec., No. 24-3201, 2024 WL 4603964, at *4 (6th Cir. Oct. 29, 2024).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate burden of establishing entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011); Dameon W. v. O'Malley, 24-cv-1072, 2025 WL 880255, at *5 (W.D. Tenn. Mar. 21, 2025). The initial burden is on the claimant to prove they have a disability as defined by the Act. Napier v. Comm'r of Soc. Sec., 127 F4th 1000, 1003 (6th Cir. 2025) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Napier, 127 F.4th at 1003; Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security

Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See id. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled.

On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See id. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, the ALJ must proceed to the fifth step, where they determine whether the claimant can perform other work existing in significant numbers in the national economy. See id. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. Id. § 404.1520(a)(4).

**A.   Articulation of the Effects of Obesity**

Plaintiff argues that ALJ Shimer did not correctly apply relevant Social Security regulations when determining her RFC, and that the resulting determination is not supported by substantial evidence. (ECF No. 15 at PageID 7.) Plaintiff claims ALJ Shimer did not "consider the limiting effects of obesity" and did not sufficiently assess the RFC to "show the effect obesity has on [Plaintiff's] ability to perform routine movement and necessary physical activity within the work environment" as required by Social Security Ruling 19-2p, 2019 SSR LEXIS 2. (Id. at PageID 5.)

Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). They constitute "public precedential decisions" relating to the Administration's interpretations of law and regulations and dictate how certain laws and regulations are applied. Social Security Ruling 19-2p, 2019 SSR LEXIS 2, at *1 (May 20, 2019). Both Plaintiff and the government agree that SSR 19-2p, which articulates how the Administration establishes "that a person has a medically determinable impairment of obesity and how [they] evaluate obesity in disability claims under Titles II and XVI of the Social Security Act," applies. Id. SSR 19-2p requires an ALJ to "consider the limiting effects of obesity when assessing a person's RFC." 2019 SSR LEXIS 2 at *12. The Ruling notes that "the combined effects of obesity with another impairment(s) may be

- 9 -

greater than the effects of each of the impairments considered separately" and requires ALJs to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." Id.

Where a plaintiff disagrees that the analysis of obesity is adequate, they must further meet the "burden of showing specifically how [their] obesity, in combination with other impairments, limited [their] ability to a degree inconsistent with the ALJ's RFC." Lumpkin v. Comm'r of Soc. Sec., No. 1:20-CV-01849-DAP, 2021 WL 5828692, at *2 (N.D. Ohio Oct. 6, 2021). Plaintiff argues that ALJ Shimer "merely invoking SSR 19-2p and stating that Plaintiff's Obesity would 'cause such limitations' is not enough to fulfill the requirements" and thus fails to adequately explain how ALJ Shimer considered Plaintiff's obesity. (ECF No. 15 at PageID 6.)

In the analysis of Plaintiff's medical history to determine her RFC, it is clear ALJ Shimer followed the commands of SSR 19-2p. He posits:

> In considering [Plaintiff's] symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce [Plaintiff's] pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce [Plaintiff's] pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit

> [her] work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if [Plaintiff's] symptoms limit the ability to do work-related activities.

(ECF No. 10 at PageID 23.) Synthesizing the medical evidence, Plaintiff's own allegations of symptoms, and the observations of her healthcare providers, ALJ Shimer explicitly outlines that:

> [Plaintiff] is obese . . . . obesity is often associated with musculoskeletal, respiratory, cardiovascular, and endocrine disorders. Obesity also increases the risk of developing other impairments including: type II diabetes mellitus; disease of the heart and blood vessels; respiratory impairments; osteoarthritis; mental impairments; and various cancers. . . . When evaluating the severity of obesity, all symptoms and any functional limitations in the ability to do basic work activities resulting from obesity and any physical or mental impairments are considered. Based on the medical record, in combination with [Plaintiff's] other impairments, the obesity does cause such limitations and is therefore severe.

(Id. at PageID 24 (internal citations omitted).)

This is a clear recognition of Plaintiff's obesity and its limiting factors, considered alongside "the objective medical evidence and other evidence." (Id. at PageID 23.) SSR 19-2p merely requires that obesity be considered, and that the conclusion reached regarding its effects be explained. Here, ALJ Shimer recognized that Plaintiff's obesity caused some limitations but explained why it did not lead to a classification of disability. To support this decision, ALJ Shimer notes the progression of

Plaintiff's improving condition throughout 2022 and 2023 and how her reports "showed a level of activity not entirely consistent with her allegation of disability." (Id. at PageID 25.) In 2022,

> [Plaintiff] report[ed] feeling well and having a generally normal examination in early May of 2022, [but] reported significant difficulties on her function report. On her function report, [Plaintiff] reported that she was tired and that her feet swelled if she stood for a long period of time. However, records show that her lower extremity edema had resolved with diuretics. She also reported that she could not work outside due to tiredness and swelling, even though she told her primary care provider that she was feeling well at her visit earlier in the months, with no noted complaints of fatigue, with records, again, showing resolved edema. She reported being able to care for her grandchildren and her disabled child, with help, even though this activity is one that is often physically and mentally challenging. Despite her reported difficulties, she reported no problems with personal care. She reported that she did not prepare meals and, though she could do laundry and could sometimes clean until she got tired, despite her lack of reported symptoms at primary care. She reported that she could drive, shop, and handle money, though she reported having no checking or savings. She generally reported fatigue when walking, with reports that she could walk for 200 to 300 feet before needing to rest for 10 to 15 minutes, even though she reported no such symptoms at her most recent visit to primary care. She reported no side effects with her medications, consistent with her lack of reported problems at primary care.

(Id. (internal citations omitted).) In 2023,

> [Plaintiff] reported that her medication sometimes made her drowsy, though at least one medication was for sleep. Even so, she reported no side effects from any medication in her prior function report and has not reported any problems at primary care. She did report being able to, with her husband's help, care for her granddaughter, an activity that can be both mentally and physically challenging. While she reported that she used to be able to stand long periods of time and that she had no

> shortness of breath before her illness, [s]he denied shortness of breath at her last doctor's visit. She also reported that she had no problems with personal care. She reported that she could prepare simple meals and do cleaning and laundry. However, she reported that she also spent most of her day watching television, doing so until she dozed off. She reported texting family, going to church on Sundays, and going to the grocery store monthly. She generally reported difficulty standing and walking, with swelling of the feet when standing too long and shortness of breath when walking. However, she has not complained of such difficulty for some time, with treatment generally resolving the symptoms.

(Id. at PageID 27-28 (internal citations omitted).) Additionally, follow-up visits with Plaintiff's physicians showed "significant improvement and stability" in cardiology and "reports of work activity, along with very conservative treatment" in podiatry. (Id. at PageID 28.)

Plaintiff has not made any argument about how her obesity in combination with other symptoms limited her ability more than the ALJ's RFC determination. ALJ Shimer already indicated that he acknowledged and weighed the evidence of Plaintiff's subjective complaints and symptoms due to her obesity. He subsequently classified her RFC to perform light work but recognized that her ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations (Id. at PageID 31-32.) Since Plaintiff has no past relevant work, ALJ Shimer considered her age, education, work experience, and RFC to determine whether there were jobs available in significant numbers in the national economy that Plaintiff could perform. (Id. at

PageID 32.) He asked for supporting testimony from a vocational expert. The vocational expert testified that given all the limiting factors, Plaintiff would be able to perform the requirements of occupations such as "assembler, electronic accessories" with 9,400 jobs nationally, "buckle inspector" with 4,100 jobs nationally, "assembler, small products" with 11,800 jobs nationally, "lamp shade assembler" with 20,000 jobs nationally, "clerical addresser" with 18,000 jobs nationally, and "eyeglass assembler" with 23,000 jobs nationally. (Id. at PageID 33.) Using this information, ALJ Shimer concluded that Plaintiff is not disabled.

Plaintiff's burden requires her to specify symptoms the ALJ failed to consider that her obesity exacerbates, but she has not sufficiently done so. Her allegations of symptoms are neither entirely consistent with medical evidence and other evidence in the record, nor has she proposed additional limitations that were missing from ALJ Shimer's findings. Plaintiff does not dispute any other aspect of the ALJ's decision. As such, because Plaintiff has failed to meet this burden and because ALJ Shimer explicitly considered how Plaintiff's obesity impacted her other impairments and reduced her RFC accordingly, the ALJ's determination was supported by substantial evidence.

## III. CONCLUSION

For the reasons described above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

                                      s/ Tu M. Pham
                                      TU M. PHAM
                                      Chief United States Magistrate Judge

                                      November 12, 2025
                                      Date